UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 99-9086-CIV-HURLEY
Magistrate Judge Bandstra

**NIGHT BOX**
**FILED**

[JUN 1 9 2001

CLERK, USDC / SDFL / WPB

GENERAL ELECTRIC COMPANY,

      Plaintiff,

v.

POWER SYSTEMS MFG. LLC,

      Defendant.

_____

## POWER SYSTEMS' MOTION AND MEMORANDUM OF LAW TO PRECLUDE GE FROM ASSERTING INFRINGEMENT OF CLAIM 12 OF '570 PATENT

Power Systems Mfg. LLC ("Power Systems") moves the Court to preclude General Electric Company ("GE") from asserting that Power Systems infringes claim 12 of U.S. Patent No. 4,982,570 ("the '570 patent") directed to a secondary fuel nozzle.

### INTRODUCTION

1.      Claim 12 is the broadest claim of the '570 patent. Throughout the course of discovery in this case, however, GE contended that only claims 2 and 7 of the '570 patent were infringed by Power Systems. Nonetheless, long after the close of discovery and the passage of the deadlines for amending pleadings and filing dispositive motions, GE belatedly disclosed, in the report of its technical expert, that it intended to assert that Power Systems also infringes claim 12 in this lawsuit.

2.      During discovery, GE was asked to produce a Rule 30(b)(6) witness to testify regarding "<u>each and every claim</u> of each patent that Plaintiff contends is infringed by the [allegedly infringing] product." (Defendant's Notice of Deposition Pursuant to Rule 30 (b)(6), attached as Appendix A.) (emphasis added).  In order to simplify discovery, the parties agreed that GE would provide an interrogatory response for the designated topic rather than produce a witness to testify on that topic.  In a letter dated October 20, 2000, GE responded by asserting only that "independent claims 2 and 7 of the '570 patent are infringed."  (Letter from James Quarles to Michael Hurd, attached as Appendix B).  At no time during the next 6 months did GE amend its response or provide any notice or suggestion that it intended to assert claim 12 in this lawsuit.

3.      Power Systems conducted its discovery and developed its noninfringement and invalidity defenses in reliance on GE's representations that only claims 2 and 7 of the '570 patent were being asserted against it.  It was only after the close of discovery and expiration of the dispositive motion deadline that GE first disclosed that claim 12 might be asserted.  The first hint that claim 12 might be asserted was contained in the report of GE's technical expert, Dr. Santoro. Because the reports of Power Systems' experts were exchanged concurrently with Dr. Santoro's report, Power Systems' litigation strategy was revealed to GE before Power Systems learned of the potential assertion of claim 12.  Counsel for GE has subsequently confirmed that GE intends to assert infringement of claim 12 at trial.

4.      The only explanation offered by GE for its late decision to assert claim 12 is the following statement from the report of Dr. Santoro, GE's technical expert, in which it is clear that GE is attempting to hedge its bets in the event it should lose on claims 2 and 7:

- 2 -

I have not had the opportunity to examine an examplar [sic] of PSM's accused secondary nozzle, <u>nor am I aware whether PSM will contend or the court will determine that GE is precluded from relying on the doctrine of equivalents with respect to any element of claims 2 or 7; therefore, I reserve the right to consider the applicability of additional claims after</u> examining an examplar [sic] of PSM's accused secondary nozzle and <u>learning of any limitations upon the doctrine of equivalents</u>. The first six boxes of the chart addressing Claim 2 and appearing on page 16 contain all of the elements and the proper construction of Claim 12 of the '570 patent. (Declaration of Dr. Robert J. Santoro, at 18-19, relevant pages, attached as Appendix C.) (emphasis added).

5.      Because claim 12 is broader than claims 2 and 7, any nozzle that infringes claims 2 and 7 must also infringe claim 12. Due to its breadth, however, claim 12 is more susceptible to invalidation than claims 2 and 7. As a result, GE's initial decision not to assert claim 12 was patterned after a common litigation strategy designed to reduce the possibility of claim invalidation by asserting infringement of only the narrowest claims believed to be infringed.

## ARGUMENT

6.      It would be fundamentally unfair and highly prejudicial to Power Systems to permit GE to dramatically alter its litigation strategy by asserting the broadest claim in the '570 patent after Power Systems finalized and then disclosed its noninfringement and invalidity strategy in reliance on GE's earlier contention that only the two narrower claims of the patent were being asserted. The timing of GE's first assertion of claim 12 in conjunction with service of its expert report strongly suggests that GE belatedly recognized that it could not prevail on its claim of infringement of claims 2 and 7. Regardless of whether GE's late assertion of claim 12 was a litigation ploy designed to lock Power Systems into a litigation position, developed for narrower claims, that would prove untenable with respect to a broader claim, or whether it was merely a desperate attempt to salvage GE's infringement case after it recognized the weakness of its position, Power Systems should not be forced to suffer the consequences.

LAW OFFICES
SHOOK, HARDY & BACON L.L.P.
367979.1   MIAMI CENTER, SUITE 2400, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 • TELEPHONE (305) 358-5171

7.     On August 29, 2000, GE first provided its contentions of infringement of the '570 patent.  In a letter to counsel for Power Systems, counsel for GE stated that only claims 2 and 7 of the '570 patent were infringed by Power Systems' secondary fuel nozzle. (Letter from William Lee to Trent Webb, attached as Appendix D.)  Later, GE was asked to provide its complete contentions with respect to infringement of the '570 patent by identifying "each and every claim of [the '570 patent] that plaintiff contends is infringed by the product."  In a letter dated October 20, 2000, GE responded that only independent claims 2 and 7 of the '570 patent were infringed. (*See* Appendix B.)  Power Systems reasonably relied upon these affirmative representations by GE throughout the course of the litigation.  In detrimental reliance on GE's affirmative representations, Power Systems focused its litigation strategy on defending itself against the more narrow claims 2 and 7, rather than the broader claim 12.  Under Florida law, GE is estopped from now changing its position by asserting the significantly broader claim 12 against Power Systems.  Marine Transportation Services Seabarge Group, Inc. v. Python High Performance Marine Corp., 16 F.3d 1133, 1138-39 (11th Cir. 1994).

8.     Since claim 12 is the broadest claim in the '570 patent, it can be infringed by fuel nozzles that do not infringe the much narrower claims 2 and 7, and as such, claim 12 can be used to attack a wide range of fuel nozzle designs.  However, the broad scope of claim 12 also makes it most susceptible to a summary judgment motion attacking its validity.  Having waited until after the close of the dispositive motion deadline to assert claim 12, and having deprived Power Systems of the opportunity to file a summary judgment motion attacking the validity of claim 12, GE now seeks to add this claim to the lawsuit.

9.     This belated assertion of claim 12 has also deprived Power Systems of the opportunity to conduct discovery directed specifically to claim 12 that could provide the basis for

LAW OFFICES
SHOOK, HARDY & BACON L.L.P.
367979.1    MIAMI CENTER, SUITE 2400, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 • TELEPHONE (305) 358-5171

defenses such as invalidity and inequitable conduct resulting from the inventors failing to disclose material prior art to the U.S. Patent and Trademark Office during prosecution of claim 12.

10.     The present facts are closely analogous to those presented in <u>Ameritek Inc.</u> <u>v. Carolina Lasercut Corp.</u>, 891 F. Supp. 254 (M.D.N.C. 1994).  In that case, plaintiff sought leave to amend its complaint prior to the close of discovery to add an allegation of infringement of a newly issued patent that was related to and contained the same disclosure as the patent already in suit. Although plaintiff argued that adding the second patent would not cause prejudice or require additional discovery, the court refused to permit amendment of the complaint because, among other reasons, the defendant would be prevented from bringing any dispositive motions with respect to the new patent. <u>Id.</u> at 256.  In addition, even though the claims in the two patents were similar, the court noted that there were some differences in the claims and addition of the second patent to the lawsuit "would substantially increase the burden on [defendant] at the very end of the discovery period." <u>Id.</u> at 255.

11.     In the present case, GE is also seeking to assert a claim that is different (and significantly more broad) in scope than the claims already in suit.  The fact that GE's newly asserted claim and existing claims are in the same patent is not a basis for distinguishing <u>Ameritek</u> since the only difference between the two related patents in <u>Ameritek</u> were the claims themselves.  As in <u>Ameritek</u>, Power Systems would be unfairly prejudiced by permitting late assertion of claim 12 because dispositive motions could not be brought with respect to that claim and additional discovery would be required.  Because discovery has already closed and the present case is ready for trial on the June trial calendar, reopening discovery related to claim 12 would require postponement of trial.

12.     Back when it had the right to assert any or all of the claims in the '570 patent against Power Systems' secondary fuel nozzle, GE decided against asserting claim 12, and chose

LAW OFFICES
SHOOK, HARDY & BACON L.L.P.
367979.1   MIAMI CENTER, SUITE 2400, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 • TELEPHONE (305) 358-5171

instead to attack Power Systems with claims 2 and 7. After learning Power Systems' non-infringement and invalidity positions with respect to claims 2 and 7, GE now seeks to reverse its ill-fated decision to assert only those narrow claims. GE should not be permitted to do so to the detriment of Power Systems.

13.     For the foregoing reasons, Power Systems requests that the Court order that GE is estopped from asserting in this matter infringement of claim 12 of the '570 patent.

SHOOK, HARDY & BACON L.L.P.

By _____

Michael R. Tein
Fla. Bar No. 993522
E-Mail: mtein@shb.com
Miami Center, Suite 2400
201 South Biscayne Blvd.
Miami, FL 33131-4332
305-358-5171
305-358-7470 - fax

and

Michael B. Hurd, Esq.
E-Mail: mhurd@shb.com
B. Trent Webb, Esq.
E-Mail: twebb@shb.com
Shook, Hardy & Bacon LLP
One Kansas City Place
1200 Main Street
Kansas City, MO 64105-2118
816-474-6550
816-421-5547 - fax
*Counsel for Power Systems*

## LOCAL RULE 7.1(A)(3) CERTIFICATE

I HEREBY CERTIFY that counsel for the parties conferred prior to the filing of this motion in a good-faith effort to resolve by agreement the issues raised therein.

_____
Michael R. Tein

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been forwarded via facsimile (without exhibits) and regular U.S. mail (with exhibits) to all counsel as listed below on June 19, 2001.

_____
Michael R. Tein

**EDWARD M. MULLINS, ESQ.**
Astigarraga, Davis, Mullins & Grossman, P.A.
201 S. Biscayne Blvd., Suite 2000
Miami, Florida 33131
(305) 372-8282
(305) 372-8202 - FAX

**WILLIAM DiSALVATORE, ESQ.**
Hale & Dorr, LLP
405 Lexington Avenue, 37th floor
New York, NY   10174
(212) 937-7200
(212) 937-7300 - FAX

**JAMES L. QUARLES, III, ESQ.**
Hale & Dorr, LLP.
1455 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 942-8400
(202) 942-8484 - FAX

**WILLIAM F. LEE, ESQ.**
Hale & Dorr, LLP
60 State Street
Boston, Massachusetts  02109
(617) 526-6000
(617) 526-5000 - FAX

LAW OFFICES
SHOOK, HARDY & BACON LLP
367979.1   MIAMI CENTER, SUITE 2400, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 • TELEPHONE (305) 358-5171

**J. DAVID WHARTON, ESQ.**
**B. TRENT WEBB, ESQ.**
**MICHAEL HURD, ESQ.**
Shook Hardy & Bacon, LLP
1200 Main St.
One Kansas City Place
Kansas City, MO    64105-2118
(816) 474-6550
(816) 421-5547 - FAX

- 8 -

# APPENDIX A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| General Electric Company, | ) | Civil Action No. 99-9086 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Power Systems Mfg. LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S NOTICE OF DEPOSITION PURSUANT TO RULE 30(B)(6)

PLEASE TAKE NOTICE that on October 10, 2000, at 9:00 a.m. at the offices of

Shook, Hardy and Bacon, LLP, Miami Center, 24th Floor, 201 South Biscayne Boulevard, Miami,

FL 33131, or at another time and place agreed upon by counsel, Defendant will take the deposition

of Plaintiff General Electric Company, pursuant to Rules 30(b)(6) and 45 of the Federal Rules of

Civil Procedure, by the designee or designees who consent to testify on its behalf regarding the

subjects identified in the attached Attachment A. The testimony will be recorded by sound, visual

and stenographic means before a person qualified to administer oaths, and will continue from day-to-

day until concluded.

You are invited to attend and cross-examine.

Respectfully submitted,

By: _____
J. David Wharton, Esq.
Michael B. Hurd, Esq.
B. Trent Webb, Esq.

**SHOOK, HARDY & BACON LLP**
One Kansas City Place
1200 Main Street
Kansas City, Missouri  64105-2118
Telephone: (816) 474-6550
Fax: (816) 421-5547

-and-

Marc R. Levinson, Esq., Florida Bar No.: 0000357
Eileen Tilghman, Esq., Florida Bar No.: 570524
**SHOOK, HARDY & BACON L.L.P.**
Miami Center, Suite 2400
201 South Biscayne Boulevard
Miami, Florida 33131-4332
Telephone: (305) 358-5171
Fax: (305) 358-7470

ATTORNEYS FOR DEFENDANT

CERTIFICATE OF SERVICE

     I hereby certify that the foregoing Defendant's Notice of Deposition Pursuant to Rule 30(b)(6)  was served on the following counsel via facsimile and first-class mail on September 19, 2000.

William F. Lee, Esq.
James L. Quarles III, Esq.
William G. McElwain, Esq.
Hale and Dorr LLP
60 State Street
Boston, MA 02109
Telephone: 526-60000

       I also hereby certify that the foregoing Defendant's Notice of Deposition Pursuant to Rule 30(b)(6) was served on the following counsel via hand delivery on September 19, 2000.

Jose I. Astigarraga, Esq.
Edward M. Mullins, Esq.
Astigarraga Davis
Miami Center, 20th Floor
201 South Biscayne Boulevard
Miami, FL 33131

By _____
     Marc R. Levinson (FBN 0000357)
     Attorney for Defendant

LAW OFFICES
SHOOK, HARDY & BACON L.L.P.
821348.1   MIAMI CENTER, SUITE 2400, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 • TELEPHONE (305) 358-5171

## ATTACHMENT A

Power Systems Mfg. LLC will take the deposition of General Electric Company pursuant to Fed. R. Civ. P. 30(b)(6) and 45 on the following subjects:

### INSTRUCTIONS AND DEFINITIONS

The following Instructions and Definitions shall apply to the subjects listed below:

1.      **"Plaintiff's Asserted Patents"** refers separately and collectively to the patents alleged by Plaintiff to be infringed by Power Systems Mfg., LLC including, but not limited to, United States Patent Nos. 5,117,636, 5,211,004 and 4,982,570.

2.      **"Plaintiff"** or **"GE"** shall mean General Electric Company, including its subsidiaries and affiliates, and all representatives of General Electric Company, including its officers, directors, employees, attorneys and agents.

3.      **"Defendant"** or **"PSM"** shall mean defendant Power Systems Mfg., LLC.

### SUBJECTS

1.      An identification of each product of PSM alleged to infringe Plaintiff's Asserted Patents, and for each such product:

a.      each and every claim of each patent that Plaintiff contends is infringed by the product;

b.      each and every reason and/or basis for each of Plaintiff's contentions of infringement;

c.      the proposed construction of each allegedly infringed claim; and

819667.1

     d.      whether each claim is alleged to be infringed literally, under the doctrine of equivalents, or both.

     2.      The basis or bases for Plaintiff's contention that PSM has contributorily infringed any of Plaintiff's Asserted Patents.

     3.      The basis or bases for Plaintiff's contention that PSM has actively induced infringement of any of Plaintiff's Asserted Patents.

     4.      The nature of and extent to which plaintiff has tested, investigated, or inspected such product, component or service of PSM to determine whether the product, component or service infringes any claim of Plaintiff's Asserted Patents.

     5.      The basis or bases for Plaintiff's contention that, as a result of PSM alleged infringement, Plaintiff will suffer irreparable harm.

     6.      With regard to any product or products made by Plaintiff or its Licensees in accordance with the alleged inventions claimed in Plaintiff's Asserted Patents:

     a.      the name or product number of the product and the claim(s) of each patent allegedly covering the product;

     b.      the extent to which Plaintiff or its Licensees have marked the product with a patent number;

819667.1

c.      the decision of Plaintiff or its Licensees as to whether to mark the product with a patent number, including the specific reasons for such decision;

d.      if Plaintiff or its Licensees have marked the product with a patent number, the dates upon which patent marking began and all facts relating to such marking; and

e.      Plaintiff's explanation as to how it has complied with the marking requirements of 35 U.S.C. § 287 with respect to each of the Asserted Patents.

7.      The theories under which Plaintiff is seeking damages from Defendant in connection with this lawsuit, and for each theory:

a.      the facts upon which Plaintiff will rely to prove it is entitled to damages under the theory;

b.      all documents upon which Plaintiff will rely to support the theory;

c.      the person(s) most knowledgeable regarding the facts supporting the theory;

d.      the amount of damages alleged by Plaintiff to be recoverable under the theory;

e.      the formula used by Plaintiff to compute the amount of damages; and

f.      Plaintiff's explanation as to how it has marked its products or otherwise complied with 35 U.S.C. § 287 in order to recover such damages.

8.      The legal and factual basis for Plaintiffs' allegation that U.S. Patent No. 5,211,004 ("the '004 patent") is not invalid or unenforceable over U.S. Patent No. 3,777,983 ("the '983 patent"), including:

a.      the reasons why the '983 patent was not cited in connection with the prosecution of the '004 patent;

819667.1

    b.  the reasons why the '983 patent was not material to the prosecution of the '004 patent;

    c.  the reasons why the '983 patent does not anticipate the claimed invention of the '004 patent;

    d.  the reasons why the '983 patent does not render obvious the claimed invention of the '004 patent; and

    e.  the dates of the first sale, offer for sale and public disclosure by GE of the commercial nozzle covered by the '983 patent.


    9.  GE's commercial activities in the Dry Low NOx combustor and Dry Low NOx combustor component market, including the refurbishment and installation of such combustors and components ("the Market"), including:

    a.  GE's market share in the Market;

    b.  the identity of GE's competitors in the Market;

    c.  the effect of GE patents on competition in the Market;

    d.  GE's activities to expand its market share in the Market;

    e.  any attempts by GE to enforce any of its patents against competitors in the Market, whether by instituting legal action or by notifying competitors of potential patent infringement.


    10.  The basis for GE's allegation that PSM has willfully infringed Plaintiff's Asserted Patents.

819667.1

# APPENDIX B

**HALE AND DORR** LLP

C O U N S E L L O R S   A T   L A W

**www.haledorr.com**

THE WILLARD OFFICE BUILDING
1455 PENNSYLVANIA AVENUE. N.W. • WASHINGTON, D.C. 20004-1008
202-942-8400 • FAX 202-942-8484

JAMES L. QUARLES, III

202-942-8404
james.quarles@haledorr.com

October 20, 2000

**VIA FACSIMILE**

Michael B. Hurd, Esq.
Shook, Hardy and Bacon LLP
One Kansas City Place
1200 Main Street
Kansas City, MO 64105-2118

Re:  General Electric Co. v. Power Systems Mfg. Co.

Dear Michael:

In my letter to you of Friday, I undertook to provide a claim chart for the secondary fuel nozzle and a construction of the claim terms "diffusion nozzle" and "diffusion pilot" in lieu of providing a witness on the issues set forth in paragraph 1 of your 30(b)(6) notice. This letter is intended to provide that information to you. I will provide the information in the order requested by your notice:

> **1.     An identification of each product of PSM alleged to infringe Plaintiffs' Asserted Patents, and for each such product:**

On the basis of the information known to us as a result of the representations made by Robert Kraft in our telephone interviews of him, the only secondary fuel nozzle sold or offered for sale by PSM is the nozzle depicted on the drawings furnished by you and labeled PSM01672-PSM01675. Based on those representations, the only product alleged to infringe the '570 patent is the secondary fuel nozzle depicted on those drawings ("PSM secondary Fuel nozzle".)

> **a.     each and every claim of each patent that Plaintiff contends is infringed by the product;**

The PSM secondary fuel nozzle infringes independent claims 2 and 7 of the '570 patent.

Michael B. Hurd, E
October 20, 2000
Page 2

        **b.**     **each and every reason and/or basis for each of Plaintiff's contentions of infringement;**

The PSM secondary fuel nozzle infringes because it contains every element of each claim asserted. A claim chart comparing the elements of the claim to the PSM secondary fuel nozzle is contained at Tab A to this letter.

        **c.**     **the proposed construction of each allegedly infringed claim;**

You have indicated that the terms of interest to you are the terms "diffusion nozzle" and "diffusion pilot." We believe the appropriate construction of those terms depends upon the type of flame produced. A diffusion nozzle or diffusion pilot is capable of producing a diffusion flame, i.e. a flame resulting from the diffusion of the fuel and oxidizer gases into each other and reaction at their interface upon ignition. The fuel itself may be premixed with some air. Finally, a "pilot" generally ignites or stabilizes a flame.

        **d.**     **whether each claim is alleged to be infringed literally, under the doctrine of equivalents or both.**

We believe that the PSM secondary fuel nozzle infringes the asserted claims literally, but if not literally, under the doctrine of equivalents.

With respect to the depositions of Ms. Waslo and Mr. Washam, I expect to produce them in our Boston office on Wednesday, October 25 and Thursday, October 26, respectively. If you have any questions, or require any further information, please give me a call.

Very truly yours,

James L. Quarles, III

# APPENDIX C

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

General Electric Company,       )
            )
         Plaintiff,    )
            )
        v.       )    CA No. 99-9086 – CIV– Hurley
            )
            )
Power Systems Mfg. LLC,      )
            )
        Defendants.   )
_____)

## DECLARATION OF DR. ROBERT J. SANTORO

### Introduction

1.    I have been asked by General Electric Company ("GE") to express my expert opinion on the issues of (1) whether a primary fuel nozzle made, used, sold or offered for sale by PSM infringes one or more claims of U.S. Patent No. 5,211,004 ("the '004 patent"); (2) whether a venturi assembly contained in combustion liners made, used, sold or offered for sale by Power Systems Mfg. LLC ("PSM") infringes one or more claims of U.S. Patent No. 5,117,636 ("the '636 patent"); and, (3) whether a secondary fuel nozzle made, used, sold or offered for sale by PSM infringes one or more claims of U.S. Patent No. 4,982,570 ("the '570 patent").

### Qualifications

2.    My qualifications to testify are based on my twenty years of experience in the field of combustion engineering.  I am currently the Distinguished Professor of Mechanical Engineering and the Director of The Propulsion Engineering Research Center at Pennsylvania State University ("Penn State").  I am a member of The Combustion Institute, American Physical

1        **CONFIDENTIAL-ATTORNEYS ONLY**

| CLAIM 7 | PSM Secondary Fuel Nozzle |
| --- | --- |
| | fuel delivery pipe. The radially inner end of each "peg" communicates with an annular recess in the "spoolpiece, aft" which in turn communicates with seven radial bores in the "spoolpiece, aft". As shown in the assembly drawings (PSM01673-5), each bore is aligned with a respective "peg"; and the bores and "pegs" are located toward the inlet end of the fuel delivery pipe. |
| the radial fuel distribution tubes extending beyond the circumference of the second axial fuel delivery pipe; | The radial distribution tubes extend beyond the circumference of the fuel delivery pipe. |
| said second axial air delivery pipe having an inlet end upstream of said radial fuel distribution tubes. | The inlet into the air delivery pipe, e.g., the holes in the "sleeve, aft" (PSM01675) through which air flows into the annulus in the "spoolpiece, aft", is upstream of the radial fuel distribution tubes. |

33.     I understand that PSM contends that there is some question or ambiguity concerning two of the claim terms, "diffusion nozzle" and "pre-mix." Based on my review of the specification, and my experience of more than 20 years in combustion, I understand those terms as follows. A "diffusion nozzle" is a nozzle which produces a diffusion flame. A diffusion flame is a flame which burns at the boundary where the oxidant and the fuel meet, and is exemplified by a candle flame. A pre-mix nozzle is a nozzle which produces a pre-mix flame where the fuel and oxidant are mixed together and the resulting mixture burns throughout the area of the mixture.

34.     I have not had the opportunity to examine an examplar of PSM's accused secondary nozzle, nor am I aware whether PSM will contend or the court will determine that GE is precluded from relying on the doctrine of equivalents with respect to any element of claims 2 or 7; therefore, I reserve the right to consider the applicability of additional claims after examining an examplar of PSM's accused secondary nozzle and learning of any limitations upon

the doctrine of equivalents.  The first six boxes of the chart addressing Claim 2 and appearing on page 16 contain all of the elements and the proper construction of Claim 12 of the '570 patent.

### The Technology of the '636 Patent

35.    $NO_x$ formation from the reactions involved in a gas turbine combustor increases with increasing flame temperature and with increasing residence time.  It is therefore theoretically possible to reduce $NO_x$ emissions by reducing flame temperature and/or the time at which the reacting gases remain at the peak temperatures.  In practice, however, this was difficult to achieve because of the turbulent diffusion flame characteristics of the early generations of gas turbine combustors.  In such combustors, the combustion took place in a thin layer surrounding either the evaporating liquid fuel droplets or the dispensing gaseous fuel jets at a fuel/air equivalence ratio near unity regardless of the overall reaction zone equivalence ratio.  Because this is the condition which results in the highest flame temperature, relatively large amounts of $NO_x$ were produced.

36.    The injection of significant amounts of water or steam can reduce the overall temperature of the combustion, thereby reducing $NO_x$ production so that a conventional combustor could meet the low $NO_x$ emission requirements.  However, injecting water into the source of combusion has many disadvantages including an increase in system complexity, an increase in operating costs due to the necessity for water treatment, and the degrading of other performance parameters.

37.    Lowered $NO_x$ emissions can also be achieved by lowering the peak flame temperatures through the burning of a lean, uniform mixture of fuel and air.  Because the combustion takes place in an atmosphere where there is more air than fuel and the air and fuel are mixed, the combustion occurs throughout the mixture at a lower temperature than a flame

19

CONFIDENTIAL-ATTORNEYS ONLY

through the presence of the separated zone and resistance to flashback through the acceleration of the flow through the constriction.

**Conclusions Regarding PSM's Infringement of the '636 Patent**

45.     Based upon my review of the information collected by the GE technical team from the inspection of the PSM parts, my knowledge of the function and structure of the GE systems and my experience in combustion engineering, it is my opinion that the GE venturi assembly that was copied by PSM, and thus the PSM combustor, meets all of the elements of at least claims 1 and 2 (which adds to claim one only the element that the exit from the venturi constriction be downstream).

I declare under the penalty of perjury that the foregoing is true and correct. Executed on April 25, 2001.

Robert J. Santoro, Ph.D.

24

CONFIDENTIAL-ATTORNEYS ONLY

# APPENDIX D

# HALE AND DORR LLP

C O U N S E L L O R S   A T   L A W

SEP 0 5 2000

**www.haledorr.com**

60 STATE STREET • BOSTON, MA 02109

617-526-6000 • FAX 617-526-5000

Y

WILLIAM F. LEE

617-526-6556
william.lee@haledorr.com

August 29, 2000

**By Facsimile (816-474-6550)**
**and First Class Mail**

B. Trent Webb, Esq.
Shook, Hardy & Bacon
One Kansas City Place
1200 Main Street
Kansas City, MO  64105-2118

    Re:  General Electric Co. v. Power Systems Mfg. LLC

Dear Trent:

    We have received your August 23, 2000 letter, which has not altered our conclusion that PSM's secondary fuel nozzle infringes the '570 patent assigned to General Electric Company.

    As promised, we have enclosed a claim chart that applies Claims 2 and 7 of the '570 patent to PSM's secondary fuel nozzle.  This chart should provide the reasons that you requested to support our position.  Please call us if you require any clarification.

    As Brent Mitchell and Michael Hurd have discussed, GE intends to amend its complaint to include claims based on the '570 patent.  Pursuant to Local Rule 7.1, we would request that you stipulate to our motion to amend.  Please discuss that issue with William DiSalvatore Wednesday.

                Sincerely,

                William F. Lee

Enclosure

cc:  Michael Hurd (w/enclosure) (fax: 816-474-6550)
     James Quarles, Esq. (w/enclosure)
     William DiSalvatore, Esq. (w/enclosure)

PSF. 70177/1.3.1.1 MO Lee

U. S. Patent No. 4,982,570

| Claim 2 | PSM Secondary Fuel Nozzle |
|---|---|
| An improved gas turbine combustor of the type including first and second combustion chambers interconnected by a throat region, | The combustor has two combustion chambers interconnected by a throat region.  See PSM01730 |
| said throat region being of reduced dimension compared to the first and second combustion chambers; | The throat region includes a venturi of reduced diameter.  See PSM01730 |
| a plurality of diffusion type primary fuel nozzles in annular array upstream from the first combustion chamber for introducing fuel into the first combustion chamber, | In the PSM system there are a number of primary fuel nozzles, mounted on the combustion cover in an annular array and arranged to direct fuel into the first, i.e., the upstream, combustion chamber. See PSM00063, 00126 and 01730 |
| each of the diffusion nozzles including an annular swirler for introducing pressurized air into the first combustion chamber for creating a combustible fuel mixture; | Each PSM primary fuel nozzle includes an annular swirler .  See PSM01704 |
| wherein the improvement comprises: | ------------ |
| a combined diffusion and premix nozzle positioned upstream from the second combustion chamber and having a discharge end directed into the second combustion chamber, | The PSM secondary fuel nozzle assembly is positioned upstream from the second, i.e., the downstream, combustion chamber; and its discharge end is directed into the downstream combustion chamber. See PSM00126 |
| wherein the combined diffusion and premix nozzle includes an axial fuel delivery pipe and | In the PSM secondary fuel nozzle, the axial bore through the "spoolpiece, aft" (PSM 01685) and "tube, swirler" (PSM 10689).  See also PSM 01736: "fuel supply tube 39 and the inner swirler 48" |
| an air delivery pipe surrounding the axial fuel delivery pipe, along substantially the entire length of said axial fuel delivery pipe. | In the PSM secondary fuel nozzle, an annular recess in the circumference of and surrounding the axial bore through the "spoolpiece, aft" (PSM 01685), seven axially-extending bores in the "spoolpiece, aft" arranged in an annular ring surrounding the axial bore through the "spoolpiece, aft", and the portions of the axial bore at the output end of the "spoolpiece, aft" and axial bore of the "sleeve, inner" (PSM01676) surrounding the "tube, swirler." See also PSM 01736: "the middle spool piece 53 includes a plurality of air passages 22 which provide air to swirler 48 (through housing 17[0], Figure 2) to the pilot diffusion flame.  The air is diffused from inner swirler 48 in conjunction with fuel from the fuel tube 39 for the pilot flame." "[T]he overall fuel system ... includes the pilot flame fuel transfer tube 39 and swirler 48 which is surrounded by tubular housing 170, which allows air to flow to swirler 48." |

U. S. Patent No. 4,982,570

| Claim 7 | PSM Secondary Fuel Nozzle |
|---|---|
| A combined diffusion and premix nozzle comprising: | The PSM secondary fuel nozzle assembly. |
| a diffusion pilot comprising a first axial fuel delivery pipe having an inlet end and a discharge end; | In the PSM secondary fuel nozzle, the axial bore through the "spoolpiece, aft" (PSM 01685) and "tube, swirler" (PSM 10689). See also PSM 01736: "fuel supply tube 39 and the inner swirler 48." |
| a second axial air delivery pipe coaxial with the first axial fuel delivery pipe and surrounding the axial fuel delivery pipe; and, | In the PSM secondary fuel nozzle, an annular recess in the circumference of and surrounding the axial bore through the "spoolpiece, aft" (PSM 01685), seven axially-extending bores in the "spoolpiece, aft" arranged in an annular ring surrounding the axial bore through the "spoolpiece, aft," and the portions of the axial bore at the output end of the "spoolpiece, aft" and the axial bore of the "sleeve, inner" (PSM01676) surrounding the "tube, swirler." See also PSM01736: "the middle spool piece 53 includes a plurality of air passages 22 which provide air to swirler 48 (through housing 17[0], Figure 2) to the pilot diffusion flame." |
| a first swirler annulus disposed at the discharge end of the first axial fuel delivery pipe between the first axial fuel delivery pipe and the surrounding second axial air delivery pipe; | In the PSM secondary fuel nozzle, swirler annulus (the "swirler, inner"; see PSM01680) at the discharge end of the first axial fuel delivery pipe. See also PSM0136: "The air is diffused from inner swirler 48 in conjunction with fuel from the fuel tube 39 for the pilot flame." "[T]he overall fuel system ... includes the pilot flame fuel transfer tube 39 and swirler 48 which is surrounded by tubular housing 170, which allows air to flow to swirler 48." |
| the first axial fuel delivery pipe further including a plurality of radial fuel distribution tubes extending outwardly from the first axial fuel delivery pipe and located toward the inlet end of the first axial fuel delivery pipe, | In the PSM secondary fuel nozzle, a plurality of radial fuel distribution tubes (see, e.g, PSM01687 in which seven circumferentially-spaced "peg(s), secondary spray manifold" (PSM01687) extend radially outwardly from the fuel delivery pipe). The radially inner end of each "peg" communicates with an annular recess in the "spoolpiece, aft" which in turn communicates with seven radial bores in the "spoolpiece, aft". As shown in the assembly drawings (PSM01673-5), each bore is aligned with a respective "peg;" and the bores and "pegs" are located toward the inlet end of the fuel delivery pipe. See also PSM01737: ""[T]he premix fuel manifold ... includes a hollow, rigid annular body that ... form[s] a hollow chamber that is ring shaped that receives fuel through support cylinders 16a attached to a mounting sleeve 17 that fits onto the diffusion nozzle housing 12." |
| the radial fuel distribution tubes extending beyond the circumference of the second axial fuel delivery pipe; | The radial distribution tubes extend beyond the circumference of the fuel delivery pipe. |
| said second axial air delivery pipe having an inlet end upstream of said radial fuel distribution tubes. | The inlet into the air delivery pipe, e.g., the holes in the "sleeve, aft" (PSM01675) through which air flows into the annulus in the "spoolpiece, aft," is upstream of the radial fuel distribution tubes. |

U. S. Patent No. 4,982,570

"Combined Diffusion and Premix Nozzle"

| '570 Patent Description | PSM Secondary Fuel Nozzle |
|---|---|
| "The present …design of the central or secondary nozzle ... may be described as a combination premix and diffusion nozzle.  In operation, a relatively small amount of fuel is used to sustain a diffusion pilot whereas a premix section of the nozzle provides additional fuel for ignition of the main fuel supply from the upstream primary nozzles directed into the primary combustion chamber."  (col. 1, lines 36-49) | "[T]he overall system 10 would be used as a secondary fuel nozzle system having a separate premix manifold 16 mounted away from a diffusion nozzle 20 and the diffusion nozzle housing 12." (PSM01739).  "[A]n annular fuel distribution manifold 16... is mounted by support sleeve 17 and support cylinders 16a to a diffusion nozzle housing 12 that terminates at one end with a diffusion nozzle that provides the diffusion pilot flame.  *** The annular fuel distribution manifold 16 functions to premix fuel with air traveling downstream towards the diffusion nozzle 20." (PSM01735) "A fuel nozzle system … including an annular fuel distribution manifold separately mounted away from a diffusion nozzle." (PSM01745) |
| "a combined diffusion and premix nozzle.... This is done by installing an air delivery pipe around a minimal fuel delivery pipe to support the diffusion flame combustion | "Figure 4 shows the diffusion nozzle fuel supply tube 39 and the inner swirler 48 which includes passages for allowing the fuel to pass from the fuel tube out through the inner swirler 48 and also to allow air to pass from the surrounding air passages.*** Figure 4A shows an exploded view of the overall fuel system which includes the pilot flame fuel transfer tube 39 and swirler 48 which is surrounded by tubular housing 170, which allows air to flow to swirler 48." (PSM01736) |
| whereas the maximum fuel delivery within the secondary nozzle occurs by way of radial fuel distribution tubes each of which discharge fuel into a premix chamber which surrounds the diffusion pilot comprising the axial fuel delivery pipe and its surrounding air delivery pipe."  (Col. 2, lines 9-23) | "The present invention provides for … a separate premix annular fuel ring distributor separated away from the diffusion nozzle structure and surrounding the diffusion nozzle." (PSM01732) "At full operating range, fuel would be flowing from annular manifold 16 and the diffusion nozzle 20 to ensure (with a large flame) combustion in the secondary chamber." (PSM01739) |
| "A premix chamber 84 is defined by a sleeve like truncated cone 85 which surrounds the diffusion pilot and includes a discharge end (see flow arrows) terminating adjacent the diffusion pilot discharge end.  *** The plurality of radial fuel distribution tubes extend through the air delivery pipe 74 and into the premix chamber annulus such that the fuel and air are mixed and delivered to a second swirler or premix chamber swirler 86 between the diffusion pilot and the premix chamber truncated cone." (Col. 4, lines 5-20) | The PSM secondary nozzle is mounted within a premix chamber.  See PSM00127.  "Fuel and air will be premixed by fuel emanating from annular manifold 1, which will travel downstream by air flow under pressure for combustion to enhance the overall flame for the secondary combustion chamber." (PSM10739) "[S]aid [annular fuel manifold] being mounted in a position away from the diffuser nozzle body to allow air to stream around the manifold on all sides allowing for a thorough mixture of fuel and air around the annular manifold for better premixing in the combustion chamber." (PSM01745.) |